UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| LONNIE PRATHER, | ) 1:06CV00765 |
| | ) |
| Petitioner | ) JUDGE ADAMS |
| | ) (Magistrate Judge Kenneth S. McHargh) |
| v. | ) |
| | ) |
| STUART HUDSON, | ) |
| Warden, | ) |
| | ) |
| Respondent | ) REPORT AND RECOMMENDED |
| | ) <u>DECISION OF MAGISTRATE JUDGE</u> |

McHARGH, MAG. J.

The petitioner Lonnie Prather ("Prather") has filed a petition pro se for a writ of habeas corpus regarding his 2003 convictions for murder, with a firearm specification, tampering with evidence, and possession of criminal tools in the Cuyahoga County, Ohio, Court of Common Pleas. The named respondent is Stuart Hudson ("Hudson"), Warden of Mansfield Correctional Institution. The petition is based on nine grounds, specifically:

1. The verdict on the charge of murder is against the manifest weight of the evidence.

2. The prosecution violated petitioner's constitutional rights under Article I, Section 10 of the Ohio Constitution, the Fifth Amendment to the United States Constitution, and the Due Process Clause of the Fourteenth Amendment to the United States Constitution when it engaged in improper closing arguments that placed the burden of proof upon the defense.

3. Petitioner was denied effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution when counsel failed to object to the prosecution's improper closing arguments.

4. The trial court erred and violated petitioner's due process rights when it permitted evidence of "other acts" alleged by the prosecution.

5. Petitioner was denied the effective assistance of counsel at trial, which substantially and materially affected the verdict, in violation of the State and Federal Constitution.

6. The trial court erred and abused its discretion in a series of evidentiary rulings that, individually and collectively deprived petitioner of a fair trial and violated his right to due process of law.

7. Petitioner was denied the right to confront witnesses against him denying him the right to a fair trial, in violation of the Sixth Amendment to the United States Constitution.

8. Petitioner was denied due process when the police failed to preserve and test evidence that was exculpatory, unique, and would have exonerated petitioner.

9. Petitioner was denied effective assistance of counsel:
    a.      Counsel failed to elicit testimony from the last person to see Angel Copen alive.
    b.      Counsel failed to properly research, prepare and investigate for trial, resulting in a complete failure to make the adversarial testing process work at trial, resulting in prejudice to the defense, and in violation of the State and Federal Constitution.
    c.      Counsel failed to bring to the attention of the court the improper coaching of witnesses by the prosecutor.
    d.      Counsel denied petitioner the right to testify in his own defense.

(Doc. 1, §§ 12.A.-12.D, at 4-7.)

Respondent argues that the petitioner's fifth, sixth, seventh, eighth, and ninth grounds are procedurally defaulted. (Doc. 9.)  In addition, Respondent argues that petitioner's first and fourth grounds are not cognizable in a federal habeas action and that petitioner's second, third, and fourth grounds are without merit. Id.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

The Ohio Court of Appeals set forth the following factual background:

Defendant-appellant Lonnie Prather appeals from his convictions after a jury trial for murder with a firearm specification, tampering with evidence, and possession of criminal tools.

Appellant raises three assignments of error in which he challenges his convictions on the following grounds: 1) the trial court improperly admitted into evidence a threatening statement appellant made regarding the victim; 2) the prosecutor engaged in misconduct; 3) trial counsel provided ineffective assistance; and, 4) the conviction for murder is not in accord with the weight of the evidence.

Following a review of the record, this court finds none of appellant's challenges has merit. Consequently, his convictions are affirmed.

Appellant's convictions stem from his relationship with the victim, A.C.[1] Although married to another woman, appellant publicly presented himself in the small geographic area where he lived as A.C.'s partner and "boyfriend."[2] Appellant participated in a business enterprise with A.C., often stayed with her in the house in which she lived with her children, shared a circle of friends with her, and, since he lacked a valid driver's license, depended upon her for much of his transportation around the neighborhood.



- - - - - - - - - - - - - - - - - - - - - - - -Footnotes - - - - - - - - - - - - - - - - - - - - - - - - -
[1] Pursuant to this court's policy, the female victim is referred to by only her initials.

[2] Quotes are taken from testimony given by a witness at trial.
- - - - - - - - - - - - - - - - - - - - - - End Footnotes - - - - - - - - - - - - - - - - - - - - - - - -

The business appellant and A.C. owned together was an automobile body shop.  A.C. operated the day-to-day affairs of the office, which required her to put in many hours, while appellant performed repairs on customers' vehicles with the aid of a few of his colleagues who did "contract work" for him.  Appellant also sold drugs to his friends, including A.C.  For enjoyment, the two of them socialized several times a week at a local tavern, Mr. Peabody's Pub.  In the late fall of 2002, friends noticed an increase in "tension" between appellant and A.C.; A.C. often appeared "stressed."

On the afternoon of December 14, 2002, the Cleveland Police Department twice received calls to respond to the body shop because appellant and a business associate exchanged especially heated words.  Both times, before the police arrived,

appellant left A.C. to deal with the situation; he retreated to a bar while A.C. resolved the matter.

During the second exchange, appellant became angry enough at the business associate to order his colleague Robert Zak to "go get his gun out of the drawer in the shop" for him.  Zak and the other contract workers knew appellant kept two handguns in his desk; one was a 9 millimeter semiautomatic with a "laser sight" attached, and one a small revolver.  Zak declined, but offered to drive appellant to Mr. Peabody's Pub.

Appellant arrived there with Zak at approximately 5:00 p.m.  In furtherance of plans they made to engage in target practice later in the evening, appellant called A.C. on his cellular telephone to remind her "to bring the guns and the case up to the bar."

A.C. arrived at the pub about 6:00 p.m.  She sat next to appellant at the bar and seemed "upset;" on that basis, Zak decided it was time for him to go.  Appellant accompanied him out to the rear parking lot.  Before Zak left, appellant went to A.C.'s van, retrieved a black duffle bag from it, and rummaged through the bag to obtain some cocaine for Zak.  Zak saw the 9 millimeter handgun inside the bag.

Upon appellant's return to the bar, he and A.C. had an "intense" conversation; A.C. occasionally appeared to be "crying," and appellant seemed to be attempting to quiet her.  Denise Polley, one of the bartenders and an acquaintance of the couple, sought to distract A.C.; at 7:00, when she went off duty, Polley asked A.C. to accompany her to her apartment to change clothing.

Polley and A.C. returned within the hour.  A.C.'s intense conversation with appellant again resumed.  At one point, appellant expressed his feelings about their conversation by "slamming" a roll of quarters on the bar hard enough to break the tube and send the coins flying.

Appellant later told the police A.C. was "extremely upset over the scene at the business earlier and that she was very upset about being paid late, about having her electricity cut off."  A.C. finally rose, and, according to appellant, stated, "F*** it. I'm done with this."

At 10:31 p.m., appellant left the building, A.C. following behind; they exited by way of the door that led to the rear parking lot.  The time was fixed by the videotape surveillance system the pub's owner, William Georgeson, recently had installed on the premises.  Appellant wore his cellular telephone clipped to his shirt pocket.  Minutes later, the tape displays Christopher Wells, their friend who also was Polley's boyfriend, next went out the rear door; however, Wells reentered the building after only a minute.

4

At 10:42 p.m., the videotape film shows appellant returned to the building alone.  He carried a black duffle bag and entered the men's room.  While he was inside, Wells, Polley and another friend, Brian Burke, went out the rear door, intending to "smoke a joint."  Georgeson used the men's room during this time; while he was there, he heard someone making "splashing" noises coming from the room's single stall.

As the three friends walked out into the parking lot, they saw a couple pass them appearing distressed.  Polley heard the man say, "There's somebody messed up in that van over there," and noticed he indicated A.C.'s vehicle.  Curious, they approached it.  Wells went to the open driver's door, while Burke circled to the passenger's side, trailed by Polley.

Burke had not yet reached it when he observed a large pool of blood on the asphalt of the parking lot.  He immediately used his cellular telephone to dial emergency services.  Polley looked into the van's passenger area to see A.C. "smashed" on the floor, her head covered in blood and her upper clothing tangled under her arms.  Wells ran back into the building.

The videotape film indicates Wells frantically searched for appellant inside the pub.  After Georgeson was summoned out to the parking lot, at 10:47 p.m., Wells discovered appellant in the men's room.  As the two of them exited, Wells carried the black duffle bag out.  Wells headed into the bar area.

Appellant ran outside to the van, calling out, "Oh my God. [A.C.] shot herself."  Polley had covered A.C.'s naked torso with a blanket, so appellant attempted to cradle her while they waited for the ambulance to arrive.  Meanwhile, Wells returned outdoors without the bag, but carrying bar towels; someone wrapped them around A.C.'s head in an effort to protect the open wound.

The paramedics arrived shortly thereafter.  One of them, Carl Casteele, approached the van to see appellant holding the victim.  Casteele heard appellant making comments to the effect the injury was self-inflicted.  However, Casteele thought the scene puzzling, with the victim only half-dressed and positioned as she was.

The paramedics immediately transported A.C. to the hospital, but she failed to recover from the wound.  The coroner's subsequent autopsy indicated A.C. had suffered from a gunshot wound to her right temple, with the bullet passing completely through her brain and exiting through the left scalp.  The injury was not a contact wound, but the presence of soot on the right side of her head indicated the gun was fired from one-eighth to six inches away.

5

While Georgeson and his patrons waited for the police to arrive, appellant turned to Polley and handed her a small revolver. He reassured her it "wasn't loaded," and asked Burke to take him to the hospital. Burke agreed. Polley at that point "wasn't thinking clearly," so when Wells then suggested she "go home and get away," she simply obeyed. Wells handed her keys, threw a black duffle bag into the nearby vehicle, and urged her on her way. She later placed the gun appellant had given to her into the black duffle bag. When she did so, she observed the bag already contained a larger gun. Wells appeared at her apartment soon afterward to take custody of the bag.

By the time the police officers arrived to obtain information about the incident, Georgeson's handyman approached him in the parking lot to indicate there was something in the men's room he needed to see. Georgeson followed the man inside to see bloody smears on areas of the stall. The stall's wastebasket, moreover, contained drug paraphernalia, including a scale and small plastic Ziploc" bags. Georgeson immediately informed the officers of the discovery. Furthermore, he agreed to provide them with the videotape from his surveillance camera.

The officers also located in the parking lot near A.C.'s van a spent 9 millimeter casing, a woman's hair clip, a small plastic "Ziploc" bag, and a bloodstained dollar bill. After viewing the videotape, they relayed a message to detain appellant to Doug Balogh, the officer who was interviewing him outside of the hospital.

By that time, appellant voluntarily had made several statements to Balogh. According to appellant, the afternoon incidents at the body shop had "upset" A.C. She had "excused herself" to the ladies' rest room, and "after five minutes" of sitting alone at the bar, he began looking for her. When he found her near her van on the asphalt of the parking lot "in a pool of blood," he "panicked and tried to load her into" the vehicle, but, even with the help of "two unidentified white males," could not do so. He then "ran back inside the bar to have someone call 911;" upon returning to the lot, the two males were driving "hurriedly away." Appellant remembered nothing after that.

When the police located Wells and he became aware of the existence of the pub's videotape, he led them to the place he had hidden the black duffle bag carried by appellant. Later forensic analysis demonstrated the 9 millimeter gun in the duffle bag had fired the shell casing found on the asphalt near A.C.'s van. Analysis of the blood smears in the men's room stall proved they had come from A.C.

Appellant and Wells subsequently were charged together in a five-count indictment. Appellant was charged with murder with a firearm specification, tampering with evidence, possession of drugs, and possession of criminal tools. The trial court granted appellant's motion for a separate trial.

6

Prior to the commencement of appellant's jury trial, the state dismissed the drug possession charge. The jury heard the testimony of eighteen prosecution witnesses and five defense witnesses, and reviewed numerous items of physical evidence, including the videotape, before finding appellant guilty of the remaining charges.

(Doc. 9, Respondent's Exhibit (RX) 9, at 2-9; State v. Prather, No. 83227, 2004 WL 1067955, at

*1-*4 (Ohio Ct. App. May 13, 2004).)

Prather, through his appellate counsel, raised three assignments of error on his direct appeal:

1. The verdict on the charge of murder is against the manifest weight of the evidence.

2. The Prosecution violated Appellant's constitutional rights under Article I, Section 10 of the Ohio Constitution, the Fifth Amendment to the United States Constitution and the Due Process Clause of the Fourteenth Amendment to the United States Constitution when it engaged in improper closing argument that placed the burden of proof upon the defense and Appellant was denied effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution when counsel failed to object.

3. The trial court erred and violated Appellant's due process rights when it permitted the state to present evidence of a conditional threat made eleven months before the alleged murder.

(Doc. 9, RX 7.)  On May 13, 2004, the Ohio Court of Appeals affirmed Prathers's convictions.

(Doc. 9, RX 9; Prather, 2004 WL 1067955, at *7).

On June 28, 2004, Prather filed a timely appeal to the Ohio Supreme Court. (Doc. 9, RX 10,

11.)  In his Memorandum in Support of Jurisdiction, Prather raised four propositions of law:

**Proposition of Law No. 1:** Where a reviewing Court, sitting as a "Thirteenth Juror" finds that the greater weight of credible evidence at trial is against a finding of guilt, a resultant conviction violates due process and requires reversal.

**Proposition of Law No. 2:** In the absence of overwhelming evidence of guilt, improper comments by the prosecutor, shifting the burden of proof to the defense in closing arguments, is not harmless error, but violates due process of law and requires reversal.

7

> **Proposition of Law No. 3:** Where Trial Counsel fails to object to clearly improper comments by the prosecutor, Counsel is ineffective under the Constitution and where the defense is prejudiced thereby, reversal is required.
>
> **Proposition of Law No. 4:** Where the prejudice resulting from the admission of evidence is unfair and the jury is misled by the inclusion of such evidence, due process is violated.

(Doc. 9, RX 11.)  On October 13 , 2004, the Ohio Supreme Court denied Prather leave to appeal and dismissed the appeal as not involving any substantial constitutional question. (Doc. 9, RX 13, 14; State v. Prather, 103 Ohio St. 3d 1478 (Ohio 2004)(table decision without published opinion).

After Prather filed his direct appeal but before the Ohio Court of Appeals issued its opinion affirming his conviction, Prather filed a pro se post-conviction Petition to Vacate or Set Aside Judgment Pursuant to R.C. 2953.21. (Doc. 9, RX 15.)  Prather claimed his trial counsel was ineffective for failing to adequately investigate and elicit testimony from certain witnesses. Id. at 1. On June 11, 2004, the trial court issued its Findings of Fact and Conclusions of Law wherein it concluded that Petitioner "failed to establish sufficient grounds to believe that there was such a denial or infringement of his Constitutional rights of due process, a fair trial, or the effective assistance of counsel." (Doc. 9, RX 18, at 13.)  The trial court also determined that Prather's claims were barred by res judicata. Id. at 12.

On July 6, 2004, Prather filed a pro se appeal from the trial court's denial of his post-conviction petition. (Doc. 9, RX 20.)  Prather raised the following assignments of error:

> 1) a) Whether the fact that the evidence contained in the affidavits attached to the petition was not "newly discovered" means, ipso facto, that the evidence was on the record for purposes of review on direct appeal?
>
> b) Whether res judicata can be applied to evidence that was not cognizable on direct appeal because the evidence was not part of the record in the lower court proceedings?

8

c) Whether it was error to apply res judicata to the issues reliant on the documentary evidence attached to the petition in this case?

2) a) Whether a post-conviction petitioner presenting a claim of ineffective counsel for counsel abrogating his client's absolute right to testify on his own behalf, can be said to be attempting to "back door" his testimony without being subject to cross-examination by virtue of having followed the rules by attaching his own sworn affidavit attesting to the facts?

b) Whether it was a demonstration of arbitrariness, unreasonableness and/or capriciousness for the trial court to so label Appellant's affidavit?

3) a) Whether extant evidence demonstrating that the decedent in a case charging murder was suicidal, and which was not presented at trial in which the defense theory of the case as presented to the jury was suicide, could be "outcome determinative?"

b) Whether the trial court's findings that the extant evidence would not have been outcome determinative is an unreasonable determination of the facts in light of the evidence?

4) a) Whether Appellant demonstrated that trial counsel violated essential duties owed to Appellant so as to render counsel ineffective within the meaning of the constitution?

b) Whether Appellant demonstrated that the defense was prejudiced by counsel's ineffectiveness sufficiently to warrant relief?

c) Whether the trial court erred in refusing to grant relief?

5) a) Whether Appellant sufficiently demonstrated that the petition, attachments, files and records of the case did not show that he was not entitled to relief as to require an evidentiary hearing.

b) Whether the trial court erred and abused its discretion in refusing to conduct an evidentiary hearing?

6) a) Whether appellant sufficiently demonstrated that his conviction was obtained in violation of substantive constitutional rights to require the vacation of the conviction?

b) Whether the trial court erred and abused its discretion in refusing to grant relief?

(Doc. 9, RX 21.)  On April 25, 2005, the Ohio Court of Appeals affirmed the trial court's denial of Prather's post-conviction petition. (Doc. 9, RX 24, 25; State v. Prather, No. 84913, 2005 WL 852408, at *1-*5 (Ohio Ct. App. April 14, 2005).)

On May 27, 2005, Prather appeal to the Ohio Supreme Court, raising two propositions of law:

> **Proposition of Law No. 1:** The failure of a reviewing court to pass upon each Assignment of Error in writing deprives the appellant of his due process rights to access the courts for available appellate remedies.

> **Proposition of Law No. 2:** When competent and credible documentary evidence is presented establishing that trial counsel failed to present available evidence demonstrating that an alleged homicide victim most likely committed suicide and that trial counsel unconstitutionally abrogated his client's right to testify in his own defense, it is error and abuse of discretion to deny a petition for post-conviction relief without a hearing.

(Doc. 9, RX 27.)  On September 7, 2005, the Ohio Supreme Court dismissed Petitioner's appeal as not involving any substantial constitutional question. (Doc. 9, RX 29, 30; State v. Prather, 106 Ohio St. 3d 1509 (Ohio 2005)(table decision without published opinion).)

In addition to Prather's direct appeal and post-conviction petition, Prather filed an Application to Reopen Direct Appeal with the Ohio Court of Appeals on August 6, 2004. (Doc. 9, RX 31.)  Prather alleged that appellant counsel was ineffective for not including the following two proposed assignments of error:

> **Proposed Assignment of Error No. 1:** Appellant was denied the effective assistance of counsel at trial, which substantially and materially affected the verdict, in violation of the State and Federal constitutions.

> **Proposed Assignment of Error No. 2:** The trial court erred and abused its discretion in a series of evidentiary rulings that, individually and collectively deprived Appellant of a fair trial and violated his right to due process of law.

<u>Id.</u>  Prather also moved to supplement his application, but the Court denied the request for leave to do so.  <u>See</u> doc. 9, RX 33.   On May 27, 2005, the Ohio Court of Appeals denied Prather's application, finding that his claims were barred by res judicata and without merit. (Doc. 9, RX 34, 35; <u>State v. Prather</u>, No. 83227, 2005 WL 1303200, at *1-*3 (Ohio Ct. App. May 27, 2005).)

Prather appealed the decision to the Ohio Supreme Court on July 11, 2005 and raised three propositions of law:

> **Proposition of Law No. 1:** The Court of Appeals erred when it dismissed the Application for Reopening on grounds that the allegations contained therein were barred by the doctrine of res judicata.
>
> **Proposition of Law No. 2:** The Court of Appeals erred in dismissing the application on grounds that Appellant failed to demonstrate a genuine issue of ineffective assistance of appellate counsel.
>
> **Proposition of Law No. 3:** The Court of Appeals erred in denying Appellant's Motion for Leave to Supplement the Application for Reopening on grounds that good cause was not demonstrated for the untimely filing and for exceeding the page limited [sic] when considered in conjunction with the original application.

(Doc. 9, RX 37.)  On October 5, 2005, the Ohio Supreme Court dismissed Prather's appeal as not involving any substantial constitutional question. (Doc. 9, RX 38, 39; <u>State v. Prather</u>, 106 Ohio St. 3d 1537 (Ohio 2005)(table decision without published opinion).

Prather filed this federal petition for a writ of habeas corpus pro se on April 3, 2006. (Doc. 1.)  The respondent filed an answer and return of writ on September 1, 2006. (Doc. 9.)

## II.  HABEAS CORPUS REVIEW

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254, which provides the standard of review that federal courts must apply when considering applications for a writ of habeas corpus.  Under the AEDPA, federal courts have limited power to issue a writ of habeas corpus with respect to any claim which was adjudicated on

11

the merits by a state court.  The Supreme Court, in Williams v. Taylor, provided the following guidance:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied -- the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 412-13 (2002).  See also Lorraine v. Coyle, 291 F.3d 416, 421-422 (6th Cir. 2002), cert. denied, 538 U.S. 947 (2003).

A state court decision is "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." Williams, 529 U.S. at 405.  See also Price v. Vincent, 538 U.S. 634, 640 (2003).

A state court decision is not unreasonable simply because the federal court considers the state decision to be erroneous or incorrect.  Rather, the federal court must determine that the state court decision is an objectively unreasonable application of federal law.  Williams, 529 U.S. at 410-12; Lorraine, 291 F.3d at 422.

Prather has filed his petition pro se.  The pleadings of a petition drafted by a pro se litigant are held to less stringent standards than formal pleadings drafted by lawyers, and will be liberally construed. Urbina v. Thoms, 270 F.3d 292, 295 (6th Cir. 2001) (citing Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972) (per curiam)).  Other than that, no special treatment is afforded litigants who decide to proceed pro se. McNeil v. United States, 508 U.S. 106, 113

(1993) (strict adherence to procedural requirements); <u>Jourdan v. Jabe</u>, 951 F.2d 108 (6th Cir. 1991);

<u>Brock v. Hendershott</u>, 840 F.2d 339, 343 (6th Cir. 1988).

### III.  MOTION FOR EVIDENTIARY HEARING

Prather filed a motion for an evidentiary hearing on February 28, 2007. (Doc. 18, 19.)  In his

motion, Prather requests that the Court "issue and enforce an order requiring the Respondent to

provide the Court with all of the State Court's records and the missing upper torso clothing of the

deceased. . . . Petitioner requests the appointment of qualified counsel and . . . experts to finally

resolve what the police and its in-house expert were mandated to originally perform." <u>Id.</u>  Prather

is essentially requesting an expansion of the record.  Rule 7 of the Rules Governing Section 2254

Cases permit federal habeas courts to direct the parties to supplement the record with materials

relevant to the resolution of the petition.  The decision whether to order an expansion of the record

under Rule 7 is within the sound discretion of the district court. <u>Ashworth v. Bagley</u>, No. C-2-00-

1322, 2002 WL 485003, at *11 (S.D. Ohio 2002) (citing <u>Ford v. Seabold</u>, 841 F.2d 677, 691 (6th

Cir.), <u>cert. denied</u>, 488 U.S. 928 (1988)).  However, expansion of the record must not undermine the

presumption of correctness of any factual finding made by the state courts. <u>Id.</u> at *13 (citing 28

U.S.C. § 2254(e)(1)).

The Advisory Committee notes accompanying the 1976 adoption of the rule state that the

purpose of the rule "is to enable the judge to dispose of some habeas petitions not dismissed on the

pleadings, without the time and expense required for an evidentiary hearing."  The rule is not

intended to allow a petitioner to re-try a conviction.  As will be shown in the following analysis, all

factual issues raised by Prather's petition can be resolved on the pleadings.  For this reason, the

Magistrate Judge recommends that the Court overrule Prather's motion to expand the record.

Prather filed an additional motion for an evidentiary hearing on March 12, 2007. (Doc. 20.) Prather asserts that an evidentiary hearing is warranted to determine whether Prather's counsel was ineffective for failing to investigate certain witnesses. Id. at 7-8.  An evidentiary hearing is also warranted, Prather argues, to determine the existence of cause and prejudice to excuse any alleged procedural default and whether Prather is actually innocent. Id. at 9-13.  Prather asserts that evidence not considered at trial indicates that the decedent committed suicide and thus, the state misrepresented material facts about the case. Id. at 10.  There is no need for an evidentiary hearing in the instant case.  All of Prather's claims involve legal issues which can be independently resolved without additional factual inquiry.

AEDPA sets forth express limitations on a federal court's discretion to grant an evidentiary hearing. Vroman v. Brigano, 346 F.3d 598, 606 (6th Cir. 2003).  The statute states:

(e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

 (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that–

 (A) the claim relies on–

 (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

 (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

 (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

14

28 U.S.C. § 2254(e).  A federal court may hold a hearing if the petitioner has not failed to develop the factual basis of a claim in state court, and the petitioner's factual allegations, if proved, would entitle him to relief. Vroman, 346 F.3d at 606.  A failure to develop the factual basis of a claim in state court requires a lack of diligence on the part of the petitioner. Williams v. Taylor, 529 U.S. 420, 434-35 (2000).  A finding of diligence "depends upon whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court." Id. at 435.

Prather asserts that he has met the burden of diligence under 28 U.S.C. § 2254(e)(2). However, there is only one instance in which Prather sought an evidentiary hearing in state court, in his petition to vacate, which requested a hearing solely to address Prather's allegation that his trial counsel was ineffective for failure to investigate particular witnesses and present their testimony at trial. (Doc. 9, RX 15.)  Prather sought an evidentiary hearing in order to present affidavits from these particular witnesses and his own testimony. Id.  Thus, aside from Prather's assertion that an evidentiary hearing is warranted to address his own testimony and affidavits from particular witnesses, which he claims show ineffectiveness of counsel, the record reflects that Prather failed to meet the burden of diligence under 28 U.S.C. § 2254(e)(2).

The state court adequately addressed Prather's claim of ineffective assistance of counsel for failure to investigate particular witnesses and present their testimony.  In denying Prather's petition to vacate and request for a hearing, the state court determined that Prather's proffered testimony and the affidavits from the particular witnesses did not constitute "new evidence" and that the evidence, if presented, would not have altered the outcome at trial. (Doc. 9, RX 18.)  The Ohio Court of Appeals held that the trial court's denial of the petition was proper. (Doc. 9, RX 24; Prather, 2005

WL 852408, at *1-*5.)  The court reasoned that the trial attorney exercised valid discretion in deciding not to present this witness testimony, considering that the evidence was cumulative and that "each of the witnesses either had an interest in Prather's case or lacked expertise in the area of the subject matter of the testimony." Id.  The court also agreed with the trial court's observation that "since Prather had not testified at trial, his affidavit constituted an improper and self-serving attempt to expand upon statements he had made on the night of the shooting." Id.  Under AEDPA, the state courts' determination of these factual issues must be presumed to be correct, unless Prather rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).  Prather has not met this burden.

To the extent that any of Prather's claims relating to his request for an evidentiary hearing are not barred by the due diligence provisions under 28 U.S.C. § 2254(e)(2), they still do not entitle him to a hearing.  Prather's arguments in support of a hearing are speculative, refuted by the analysis to follow of Prather's nine habeas grounds, and even if proved, are insufficient to entitle him to relief.

Prather's assertion that an evidentiary hearing is warranted to determine the existence of cause and prejudice to excuse any alleged procedural default is also refuted by the analysis to follow.

An evidentiary hearing to determine whether Prather is actually innocent is also not required. Prather asserts that the evidence he seeks to present at a hearing specifically undermine his alleged culpability. (Doc. 20, at 13.)  Although it is unclear from Petitioner's motion the specific evidence he seeks to present, it appears that he would like the court to consider the various documents, such as newspaper articles, which are attached to his traverse, and to order testing of the upper torso

16

clothing of the decedent.  The various documents and articles attached to the traverse constitute inadmissible extrajudicial material that may not be considered at an evidentiary hearing.  And, Prather's speculation regarding the potential results of any testing of the upper torso clothing of the decedent is insufficient to warrant a hearing.  Prather has failed to demonstrate how even the most favorable outcome of such testing would constitute clear and convincing evidence that but for the error, no reasonable factfinder would have found him guilty.  Accordingly, Prather has failed to demonstrate that an evidentiary hearing is warranted.

The Magistrate Judge recommends that the Court overrule Prather's motion for an evidentiary hearing.

## IV.  PROCEDURAL DEFAULT

The respondent argues that Prather has procedurally defaulted his fifth, sixth, seventh, eighth, and ninth claims because these claims were not raised in his direct appeal. (Doc. 9, at 21, 32.)  In his fifth, sixth, seventh, eighth, and ninth claims, Prather alleges ineffective assistance of counsel at trial, abuse of discretion by the trial court in a series of evidentiary rulings, denial of the right to confront witnesses against him, denial of due process when the police failed to preserve and test certain evidence, and ineffective assistance of counsel when counsel failed to elicit certain testimony and perform other particular acts. (Doc. 1, §§ 12.A.-12.D, at 4-7.)  These claims were not presented on direct appeal. See doc. 9, RX 7.

A habeas petitioner cannot obtain relief unless he has completely exhausted his available state remedies. Coleman v. Thompson, 501 U.S. 722, 731 (1991); Buell v. Mitchell, 274 F.3d 337, 349 (6th Cir. 2001) (citing Coleman v. Mitchell, 244 F.3d 533, 538 (6th Cir.), cert. denied, 534 U.S. 977 (2001)).  The exhaustion requirement is satisfied when the highest court in the state has been

given a full and fair opportunity to rule on the petitioner's claims. <u>Rust v. Zent</u>, 17 F.3d 155, 160 (6th Cir. 1994) (citing <u>Manning v. Alexander</u>, 912 F.2d 878, 881 (6th Cir. 1990)).  A petitioner cannot circumvent the exhaustion requirement by failing to comply with state procedural rules. <u>Coleman</u>, 501 U.S. at 731-732; <u>Buell</u>, 274 F.3d at 349.

Where a state court has failed to address a prisoner's federal claim(s) because the prisoner failed to meet a state procedural requirement, the state judgment rests on independent and adequate state procedural grounds, barring federal habeas relief. <u>Coleman</u>, 501 U.S. at 729-730; <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977); <u>Morales v. Coyle</u>, 98 F.Supp.2d 849, 860 (N.D. Ohio 2000).  Thus, where a state prisoner has procedurally defaulted his federal claims in state court, habeas review of those claims is barred "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." <u>Buell</u>, 274 F.3d at 348 (quoting <u>Coleman</u>, 501 U.S. at 750).

The court considers four factors to determine whether a claim has been procedurally defaulted:  (1) the court must determine whether there is a state procedural rule that is applicable to the petitioner's claim, and whether the petitioner failed to comply with the rule; (2) the court must decide whether the state courts actually enforced the procedural sanction; (3) the court must decide whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of the federal claim; and, (4) the petitioner must demonstrate that there was cause for him not to follow the procedural rule, and that he was actually prejudiced by the alleged constitutional error. <u>Buell</u>, 274 F.3d at 348 (citing <u>Maupin v. Smith</u>, 785 F.2d 135, 138 (6th Cir. 1986)); <u>Jacobs v. Mohr</u>, 265 F.3d 407, 417 (6th Cir. 2001) (quoting <u>Maupin</u>).

18

Any claims that Prather could have asserted in his direct appeal, but did not, are defaulted under the Ohio doctrine of res judicata. Coleman, 244 F.3d at 538; State v. Perry, 10 Ohio St.2d 175 (1967) (syllabus, ¶9).  Application of this Ohio rule satisfies the first three factors in Maupin. Jacobs, 265 F.3d at 417.  The record reflects that Prather did not raise his fifth, sixth, seventh, eighth, and ninth grounds in his direct appeal. See doc. 9, RX 7.  Prather first raised his fifth and sixth grounds in his application for reopening and they were held to be barred under res judicata. See doc. 9, RX 31, 34, 35; Prather, 2005 WL 1303200, at *1-*3.  Prather first raised his eighth grounds in his motion to supplement his application for reopening, which was denied. See doc. 9, RX 33, 34, 35; Prather, 2005 WL 1303200, at *3. Prather first raised portions[1] of his ninth grounds in his petition to vacate and they were held to be barred under res judicata. See doc. 9, RX 15, 18, 19; Prather, 2005 WL 852408, at *1-*5.  The remaining portions of Prather's ninth grounds and his seventh grounds were raised for the first time in his habeas corpus petition. See doc. 1.  Accordingly, Prather has procedurally defaulted his fifth, sixth, seventh, eighth, and ninth grounds because the highest court in the state was not given a full and fair opportunity to rule on that claim, Rust, 17 F.3d at 160, and the Ohio doctrine of res judicata would bar any consideration of the claim in state court, Coleman, 244 F.3d at 538; Perry, 10 Ohio St.2d at 175 (syllabus, ¶9).

When a petitioner has defaulted his federal claim in state court pursuant to an independent and adequate state procedural rule, habeas review is barred unless the petitioner can demonstrate cause for the default and actual prejudice, or demonstrate that failure to consider the claims will

---

[1] The portions of Prather's ninth grounds first raised in his petition to vacate include ineffective assistance of counsel due to counsel's failure to elicit testimony from the last person to see Angel Copen alive, and failure to properly research, prepare, and investigate for trial. See doc. 9, RX 15.

result in a fundamental miscarriage of justice. <u>Bonilla v. Hurley</u>, 370 F.3d 494, 497 (6th Cir. 2004) (per curiam), <u>cert. denied</u>, 543 U.S. 989 (2004), 370 F.3d at 497; <u>Buell</u>, 274 F.3d at 348.

Prather argues that he was prevented from raising all of his constitutional claims in his direct appeal because his counsel was responsible for his direct appeal, over which Prather had no control. (Doc. 15, at 10.)  Essentially, Prather argues that ineffective assistance of appellate counsel establishes cause sufficient to excuse his failure to follow the procedural rule.

Ineffective assistance of counsel can serve as cause to overcome procedural default. <u>Smith v. Ohio, Dept. of Rehab. and Corr.</u>, 463 F.3d 426, 432 (6th Cir. 2006) (citing <u>Deitz v. Money</u>, 391 F.3d 804, 809 (6th Cir. 2004)).  The Ohio Supreme Court has held that "issues of ineffective assistance of appellate counsel must be raised at the first opportunity to do so." <u>Monzo v. Edwards</u>, 281 F.3d 568, 578 (6th Cir. 2002) (quoting <u>State v. Williams</u>, 74 Ohio St.3d 454, 455 (1996) (per curiam)).  Claims of ineffective assistance of appellate counsel must be raised in a motion for reconsideration before the Ohio Court of Appeals. <u>Monzo</u>, 281 F.3d at 577 (citing <u>State v. Murnahan</u>, 63 Ohio St.3d 60 (1992)); Ohio App. R. 26(B).  Such a motion must be filed in the court of appeals within 90 days of the appellate judgment.  <u>State v. Lamar</u>, 102 Ohio St.3d 467, 468 (2004) (per curiam), <u>cert. denied</u>, 543 U.S. 1168 (2005); <u>State v. Reddick</u>, 72 Ohio St. 3d 88, 90 (1995) (per curiam).

Prather filed a motion to reopen his direct appeal on August 6, 2004, which was within 90 days of the May 13, 2004 appellate judgement. <u>See</u> doc. 9, RX 9, 31.  In his motion, Prather alleged that appellant counsel was ineffective for not including the following two proposed assignments of error:

20

> **Proposed Assignment of Error No. 1:** Appellant was denied the effective assistance of counsel at trial, which substantially and materially affected the verdict, in violation of the State and Federal constitutions.
>
> **Proposed Assignment of Error No. 2:** The trial court erred and abused its discretion in a series of evidentiary rulings that, individually and collectively deprived Appellant of a fair trial and violated his right to due process of law.

(Doc. 9, RX 9.)  Prather raises these proposed assignments of error as his fifth and sixth habeas grounds.  Thus, these claims are properly before this Court for the purpose of determining whether ineffectiveness of appellate counsel constitutes cause sufficient to excuse the procedural default of Prather's fifth and sixth habeas grounds.

To establish ineffective assistance of counsel sufficient to establish cause for the procedural default, Prather must show that "(1) counsel's representation fell below an objective standard of reasonableness, and (2) counsel's deficient performance prejudiced the defendant." Deitz, 391 F.3d at 809 (citing Strickland v. Washington, 466 U.S. 668, 688, 694 (1984)).  A showing of deficient performance requires the petitioner to show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Hill v. Mitchell, No. 1:98-cv-452, 2006 WL 2807017, at *49 (S.D. Ohio 2006).  A showing of prejudice requires the petitioner to show that counsel's errors were so egregious as to deprive the petitioner of a fair trial, rendering the trial result unreliable. Id. (citing Strickland, 466 U.S. at 687).  The court in Strickland noted that, "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." 466 U.S. at 689.

With respect to his first proposed assignment of error, Prather asserted that trial counsel was ineffective for failing to challenge the sufficiency of the indictment, to follow up on testimony

21

regarding the upper torso clothing of the deceased, to challenge the chain of custody of the garbage can in the restroom of the pub, and to move to sever the tampering with evidence charges from the murder charge. (Doc. 9, RX 31.)  Appellate counsel's failure to raise these issues on appeal only constitutes ineffective assistance "if there is a reasonable probability that inclusion of the issue[s] would have changed the result of the appeal. McGuire v. Mitchell, No. 3:99-CV-140, 2007 WL 1893902, at *22 (S.D. Ohio 2007), citing McFarland v. Yukins, 356 F.3d 688, 699 (6th Cir. 2004). Prejudice is not established "if a court is left with only speculation on whether the outcome would have been different." McGuire, 2007 WL 1893902, at *22, citing Baze v. Parker, 371 F.3d 310, 322 (6th Cir. 2004).  The Ohio Court of Appeals discussed the merits of each of these subclaims and determined that Prather could not satisfy either prong of the Strickland test:

> In his first assignment of error, Prather claims that his trial counsel was ineffective because trial counsel made an untimely motion to dismiss the indictment. That is, in order for possession of criminal tools to be treated as a felony, the defendant must have possession of the item(s) "for use in the commission of a felony."  Trial counsel argued that the indictment did not specify the felony for the commission of which Prather possessed the criminal tools.  Although the trial court observed that the motion . . . was untimely, the trial court also cited several authorities which would require denying the motion to dismiss because this court has repeatedly held that it is not necessary to specify the particular felony intended to be committed.  Obviously, Prather is unable to demonstrate any prejudice because he has not provided this court with any controlling authority that the motion to dismiss had merit.

> Prather also complains about how and whether his trial counsel challenged some of the state's evidence.  The application for reopening has not presented any authority which overcomes the strong presumption in favor of trial counsel's judgment regarding what may be sound trial strategy.

> Similarly, Prather's arguments that his trial counsel was ineffective for failing to move to sever the tampering with evidence and possession of criminal tools charges from the murder charge ignore the presumption in favor of trial counsel's judgment regarding trial strategy.  Furthermore, if a motion for severance due to prejudicial joinder is not made at the appropriate time, it is waived.  A court of appeals may take notice of plain error only to prevent a miscarriage of justice.  This

22

court's extensive review of the facts of this case on direct appeal reflects that
Prather's conviction is not a miscarriage of justice. . . .  On direct appeal, this court
extensively reviewed the evidence and concluded that the jury did not lose its way
in finding that Prather committed murder.

(Doc. 9, RX 33, 34, 35, <u>Prather</u>, 2005 WL 1303200, at *4-*6, internal citations omitted.)  Prather

does not show by clear and convincing evidence that any of the state appellate court's factual

findings were erroneous.  The Magistrate Judge concludes that Prather's appellate counsel did not

act in a constitutionally deficient manner by failing to raise his first proposed assignment of error

on appeal, and no prejudice resulted from its omission.

With respect to his second proposed assignment of error, Prather asserted that the trial court

erred by allowing evidence of  "other acts" consisting of testimony that witnesses purchased drugs

from Prather, by disallowing the testimony of Dr. Brenda Nichols, and by charging the jury with the

elements of drug possession.  <u>Id.</u>  The Ohio Court of Appeals also discussed the merits of each of

these subclaims and determined that Prather failed to satisfy either prong of the <u>Strickland</u> test:

In his second assignment of error, Prather argues that the trial court abused
its discretion with respect to certain evidentiary rulings.  He contends that the trial
court's admission of testimony by others that they had purchased drugs from Prather
was error.  He also complains that the trial court erred in instructing the jury on the
elements of possession of drugs although the jury was not considering a count of
possession of drugs.  We note, however, that the jury was required to determine
whether he possessed certain items "for use in the commission of a felony."  The
challenged testimony and instruction provided a basis for the jury to determine
whether the state had proven all of the elements of possession of criminal tools.

Similarly, we cannot conclude that the trial court abused its discretion by
excluding testimony from a witness regarding the effect of a combination of drugs
on the victim's system.  The trial court made a determination that there were
insufficient facts on the record for the witness to express an opinion.  Prather has not
provided this court with any authority which would require the conclusion that the
trial court's exclusion of this testimony was error.

(Doc. 9, RX 33, 34, 35, <u>Prather</u>, 2005 WL 1303200, at **6.)  For the same reasons, the Magistrate Judge concludes here that Prather's appellate counsel did not act in a constitutionally deficient manner by failing to raise his second proposed assignment of error on appeal, and no prejudice resulted from its omission.

Thus, Prather has failed to establish that his appellate counsel was ineffective under the two-pronged <u>Strickland</u> standard sufficient to constitute cause and prejudice to excuse the procedural default of his fifth and sixth grounds.

Because Prather did not raise ineffective assistance of appellate counsel claims with respect to his seventh, eighth, and ninth habeas grounds in a motion for reconsideration before the Ohio Court of Appeals, any such ineffective assistance claims are defaulted under the Ohio doctrine of res judicata. <u>Coleman v. Mitchell</u>, 244 F.3d at 538; <u>State v. Perry</u>, 10 Ohio St.2d 175 (1967) (syllabus, ¶9).  <u>See generally</u> <u>Edwards</u>, 529 U.S. at 453 (ineffective assistance of counsel claim asserted as cause for another procedurally defaulted federal claim can itself be procedurally defaulted).  Accordingly, claims of ineffective assistance of counsel cannot be used to establish cause for the procedural default of Prather's seventh, eighth, and ninth habeas grounds. <u>Edwards</u>, 529 U.S. at 452; <u>Smith</u>, 463 F.3d at 436 n.7; <u>Deitz</u>, 391 F.3d at 809.  Because Prather has not shown cause with respect to his seventh, eighth, and ninth grounds, it is unnecessary to consider whether he was prejudiced by the default. <u>Murray</u>, 477 U.S. at 494; <u>Shabazz v. Ohio</u>, 149 F.3d 1184, 1998 WL 384559, at *1 (6th Cir. 1998).

The Supreme Court has recognized a "narrow exception" to the procedural default rule "when the habeas applicant can demonstrate that the alleged constitutional error has resulted in the

24

conviction of one who is actually innocent of the underlying offense." <u>Dretke v. Haley</u>, 541 U.S. 386, 388 (2004) (citing <u>Murray</u>, 477 U.S. 478).  The Sixth Circuit has noted:

> . . . the threshold inquiry is whether "new facts raise[ ] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial."  To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." . . . To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial."  The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.'"

<u>Souter v. Jones</u>, 395 F.3d 577, 589-590 (6th Cir. 2005), internal citations omitted.  Prather asserts that he is actually innocent of the underlying offense and that the decedent committed suicide. (Doc. 15, at 49.)  In support of this allegation, Prather cites affidavits and purported testimony of certain individuals related to Angel's mental state at the time of her death and Prather's claim that he "did, in fact, indicate to [Christopher] Wells, while in the bathroom of the pub throwing up, that Angel had shot herself." (Doc. 1, § 12.D, at 6-G.)  In his traverse, Prather asserts that "but for the 'bad faith' and 'malicious conduct' of the Cleveland Police investigators, the decedent's hands and clothing would have been tested for gunshot residues 'exonerating the Petitioner.'" (Doc. 15, at 31.) The Court notes that it is not possible to determine whether testing of the decedent's hands and clothing would exonerate Petitioner.  Considering the gravity of the evidence found by the state court[2] to weigh against Prather's claim of actual innocence, the Court does not find that Prather's

---

[2] The Ohio Court of Appeals determined that a great deal of evidence contradicted Prather's claim that the decedent shot herself, including the decedent's position and the condition of her clothing; the fact that there was no gun in the vicinity; the lack of a contact wound; Prather's failure to make a "911" call regarding the decedent's condition despite the fact that he had his cellular telephone on his person; and the fact that Prather lied about the decedent having left the pub alone. <u>See</u> Doc. 9, RX 9, at 11; <u>State v. Prather</u>, 2004 WL 1067955, at *4.

allegations regarding this matter raise sufficient doubt about his guilt to undermine confidence in the result of the trial, or that this is the type of "extraordinary case" contemplated by the Supreme Court. See Murray, 477 U.S. at 496. Thus, Prather's fifth through ninth grounds have been procedurally defaulted.

## V. MANIFEST WEIGHT OF THE EVIDENCE

The first grounds of the petition assert that Prather's murder conviction "is against the manifest weight of the evidence." (Doc. 1, at 5.) The respondent asserts that manifest weight of the evidence claims are not cognizable for federal habeas review. (Doc. 9, at 15.)

A manifest weight of the evidence claim concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." State v. Thompkins, 78 Ohio St.3d 380, 387 (1997). When reviewing a weight of the evidence claim, an appellate court sits as a "thirteenth juror," and reviews the jury's resolution of conflicting testimony. Tibbs v. Florida, 457 U.S. 31, 42 (1982). In the federal habeas context, this is outside the proper role of the habeas court. The jury is the sole finder of fact in a jury trial, and the jury determines the credibility of witnesses. United States v. Adamo, 742 F.2d 927, 934-935 (6th Cir. 1984), cert. denied, 469 U.S. 1193 (1985).

Moreover, a claim that Prather's conviction was against the manifest weight of the evidence is a state law issue, and a federal habeas court has no power to grant habeas relief on the basis that a state conviction is against the weight of the evidence. Young v. Kemp, 760 F.2d 1097, 1105 (11th Cir. 1985), cert. denied, 476 U.S. 1123 (1986); Cameron v. Birkett, 348 F.Supp.2d 825, 838 (E.D. Mich. 2004) (citing cases). Accordingly, the petition should not be granted on the first grounds based on the manifest weight of the evidence.

26

## VI.  PROSECUTORIAL MISCONDUCT

As his second ground for relief, Prather contends:

> The prosecutor violated Petitioner's rights by engaging in improper closing arguments which placed the burden of proof upon the defense.  The burden of proof is on the State to prove the charges beyond a reasonable doubt.  The burden never shifts to the defendant.  The improper comments denied the petitioner the right to a fair trial.

(Doc. 1, at 5-B.)  Prather contends that statements made by the prosecutor in his closing arguments improperly shifted the burden of proof to the defense. (Doc. 1, at 5-B.)  The specific remarks at issue are as follows:

> And this is somewhat interesting, too.  Inside this little bag are clean latex gloves.  Yet, in the back of the van was found a latex glove with [A.C.]'s blood on it and in the trash can was a latex glove with *** [A.C.]'s blood on it.
>
> So [appellant], you can draw an inference at some point in time, put these gloves on, perhaps after he shot [her].  Why?  Under that (sic) circumstance, that woman that you are so close to and she's bleeding, why would he put these rubber gloves on?
>
> Does [defense counsel] give you an explanation for that ***?  Does [defense counsel] ever give you any explanation as to why this gun is being removed from the scene, a logical theory on that?
>
> All this nonsense about talking about *** a woman who shoots herself.  Well, fine ***, where's the gun? *** Why remove the gun?***

(Doc. 15, at 41.)

A claim of prosecutorial misconduct involves the Fourteenth Amendment Due Process Clause.  On habeas review, the relevant inquiry is whether any improper comments made by the prosecutor "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986); Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974); Macias v. Makowski, 291 F.3d 447, 451 (6th Cir. 2002).  The appropriate standard

27

for such a claim on habeas review is "the narrow one of due process," not the broader review which would be applied on direct appeal. Darden, 477 U.S. at 181; Donnelly, 416 U.S. at 642; Bowling v. Parker, 344 F.3d 487, 512 (6th Cir. 2003), cert. denied, 125 S.Ct. 281 (2004); Macias, 291 F.3d at 453-454.

To support a claim of prosecutorial misconduct, there must be some showing of malfeasance or wrongdoing on the part of the prosecutor. Thus, the first part of the inquiry is to determine whether the challenged remarks were indeed improper. See United States v. Garcia-Meza, 403 F.3d 364, 373 (6th Cir. 2005); United States v. Francis, 170 F.3d 546, 549 (6th Cir. 1999). If it is determined that the remarks were improper, then the Court must "apply the four-factor test set forth in United States v. Carroll, 26 F.3d 1380, 1385 (6th Cir. 1994), to determine 'whether the impropriety was flagrant' and thus violated the defendant's due process rights." Macias, 291 F.3d at 452, quoting United States v. Carter, 236 F.3d 777, 783 (6th Cir. 2001). The four-factor test considers: "(1) whether the conduct and remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the conduct or remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) whether the evidence against the defendant was strong." Carter, 236 F.3d at 783.

The Court must first determined whether the statements made were improper before applying the four-factor test. The Ohio Court of Appeals determined that the remarks Prather challenges were made for the most part in response to arguments made by defense counsel during his closing and were directed at the strength of the State's evidence; they were not intended to shift the burden of proof on the defense. (Doc. 9, RX 9, at 14; Prather, 2004 WL 1067955, at *6.) The court explained:

> . . . Counsel earlier made a tactical decision to present a theory of the case that, despite having flaws, meshed with appellant's suggestion of suicide made at the scene.
>
> Under these circumstances, appellant can demonstrate neither that the prosecutor's conduct nor defense counsel's performance compromised the fairness of his trial.

Id. at 15;.  Overall, the Court agrees with the state court's analysis.  Prather offers no argument and points to no facts sufficient to contradict the state court finding.  Prather has failed to establish that the state court's decision on this issue was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

## VII.  INEFFECTIVE ASSISTANCE OF COUNSEL

In his third ground for relief, Prather contends that he was denied effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution when counsel failed to object to the prosecutor's allegedly improper closing arguments, detailed above.

Under the Sixth Amendment to the U.S. Constitution, "the right to counsel is the right to effective assistance of counsel." Joshua v. DeWitt, 341 F.3d 430, 437 (6th Cir. 2003) (quoting McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970)).  See also Washington v. Hofbauer, 228 F.3d 689, 702 (6th Cir. 2000).  In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court formulated a two-part test for examining an ineffective assistance of counsel claim. Id. (citing Strickland, 466 U.S. at 691).  First, the petitioner must show that:

> . . . counsel's representation fell below an objective standard of reasonableness. Judicial scrutiny of counsel's performance must be highly deferential, and a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.

Miller v. Webb, 385 F.3d 666, 672 (6th Cir. 2004) (quoting Strickland, 466 U.S. at 689).  In order
to avoid second-guessing counsel's decisions, "a court must indulge a strong presumption that
counsel's conduct falls within the wide range of reasonable professional assistance; that is, the
defendant must overcome the presumption that, under the circumstances, the challenged action
might be considered sound trial strategy." Frazier v. Huffman, 343 F.3d 780, 794 (6th Cir. 2003),
cert. denied, 541 U.S. 1095 (2004) (quoting Strickland, 466 U.S. at 689, internal quotation marks
omitted); Washington, 228 F.3d at 702.

In addition, any deficient performance alone is not sufficient to grant relief on a claim for
ineffective assistance of counsel.  Strickland's second prong requires that counsel's deficiency must
have actually caused prejudice to the petitioner. Joshua, 341 F.3d at 437.  The second requirement
is that the petitioner "must show that there is a reasonable probability that, but for counsel's
unprofessional errors, the result of the proceeding would have been different. A reasonable
probability is a probability sufficient to undermine confidence in the outcome." Frazier, 343 F.3d
at 794 (quoting Strickland, 466 U.S. at 694); Washington, 228 F.3d at 702.  In the habeas context,
this Court considers Prather's claim "within the more limited assessment of whether the state court's
application of Strickland to the facts of this case was objectively unreasonable." Washington, 228
F.3d at 702.  The Court will examine the state court rulings under these standards.

The Ohio Court of Appeals correctly outlined the Strickland factors. See doc. 9, RX 9, at 13;
Prather, 2004 WL 1067955, at *5-*7.  The state court found that the comments made by the
prosecutor in his closing arguments did not exceed "the bounds of permissible argument as the
advocate of the state" and thus, counsel would not have had a basis for objecting to the comments.
(Doc. 9, RX 9, at 14; Prather, 2004 WL 1067955, at *6.)  The state court determined Prather could

30

not demonstrate that defense counsel's failure to object compromised the fairness of his trial. Id. Prather has not shown that the state court's application of Strickland was objectively unreasonable.

Accordingly, Prather has failed to establish that the state court's decision on the ineffective assistance issue was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

## VIII.  IMPROPER ADMISSION OF EVIDENCE

Prather alleges that the trial court erred and violated his right to due process when it permitted the State to present evidence of an alleged conditional threat made eleven months before the alleged murder. (Doc. 1, at 6, 6-B.)  Specifically, Prather alleges that the trial court improperly permitted, over defense objection, certain testimony made by witness Richard Defazio. See doc. 9, RX 7; doc. 1, at 6-B.  Defazio testified that eleven months prior to the decedent's death, he had a conversation with Prather during which Prather stated "if she ever turns I'll have to kill her and . . . it would be business." Id.

The "clearly established rule" is that errors of state law, "especially rulings regarding the admission or exclusion of evidence," are not within the purview of a federal habeas court. Cooper v. Sowders, 837 F.2d 284, 286 (6th Cir. 1988).  See also Johnson v. Karnes, 198 F.3d 589, 593 n.3 (6th Cir. 1999) (citing Estelle v. McGuire, 502 U.S. 62 (1991)).  Only where a violation of the state's evidentiary rule has resulted in the denial of fundamental fairness, resulting in a due process violation, will habeas corpus relief be appropriate. Brown v. O'Dea, 227 F.3d 642, 645 (6th Cir. 2000), cert. denied, 532 U.S. 1012 (2001); Cooper, 837 F.2d at 286.

This court must presume that the Ohio state courts correctly interpreted Ohio evidence law in their evidentiary rulings. Small v. Brigano, No. 04-3328, 2005 WL 1432898, at *5 (6th Cir.

31

2005). See generally Lewis v. Jeffers, 497 U.S. 764, 780 (1990) (habeas relief not available for claimed violation of state law); Estelle, 502 U.S. at 67-68, 72. The Ohio Court of Appeals ruled that the contested statements were properly admitted. The court explained:

> Evid. R. 404(B) permits the introduction into evidence of statements that tend to prove, inter alia, preparation or motive.
>
> The main issue in this case was whether appellant was involved in A.C.'s shooting. Along with the evidence that showed their conversation that night had been troubled, and further, that he had carried the gun responsible for her death, any reason appellant may have had for wanting A.C. dead was highly relevant to the appellant's underlying motive and preparation for her death. Consequently, the trial court did not err in admitting appellant's declaration.

(Doc. 9, RX 9, at 15-16; Prather, 2004 WL 1067955, at *7, internal citations omitted.) Prather has not demonstrated that admission of Defazio's testimony regarding the alleged threat resulted in the denial of fundamental fairness in violation of Prather's due process rights. Brown, 227 F.3d at 645.

Prather has failed to establish that the state court's decision on this issue was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

## V. SUMMARY

The petition should be denied. Prather has not presented allegations demonstrating the need to expand the record or for an evidentiary hearing. Prather's first claim is not cognizable for federal habeas review, and his second, third, and fourth claims are without merit. Prather has procedurally defaulted his fifth, sixth, seventh, eighth, and ninth claims.

## RECOMMENDATION

For the reasons given above, the Magistrate Judge recommends that the Court overrule Prather's motion for expansion of the record and evidentiary hearing and deny his petition.


Dated: <u>August 1, 2007</u>                          <u>/s/ Kenneth S. McHargh</u>
                                                                      Kenneth S. McHargh
                                                                      United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the District Court's order.  <u>See</u> <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981).